May it please the Court, Brad Bogan for Israel Lopez. This case is about the need to read statutes and sentencing guidelines to avoid absurd results. And an absurd result is what happened in this case. The District Court granted Mr. Lopez a sentencing reduction on only one of his two counts of conviction. The Court granted the reduction on the more serious of the two, precisely because it was more serious. So what happened here is Lopez was sentenced in 2011 on two different drug counts, one involving cocaine, the other involving marijuana. The statutory range for the cocaine count was 10 years to life. For the marijuana count, it was zero to 20 years. Now under the sentencing guidelines, both counts were grouped together to come up with a recommended sentencing range. And in that calculation, the cocaine amount was overwhelmingly the driver of that range. And the resulting range was 292 to 365 months. But the government moved for a downward departure under 5K1.1 of the sentencing guidelines to account for Mr. Lopez's substantial assistance to authorities in investigating the offense. And that, the government specifically asked for a three-level reduction. And that's what the District Court granted. And that took the range down to 210 to 262 months for the cocaine count and 210 to 240 for the marijuana count, the high end being limited by the 20-year statutory maximum for the marijuana count. Now, the court sentenced him to concurrent sentences of 210 months on both counts. So the sentences for both counts were based on the same guidelines calculations and were linked together. Then several years after that, the Sentencing Commission amended the Drug Trafficking Guideline 2D1.1 to reduce the quantity-based base offense levels for those offenses. And the effect of that was to reduce the sentencing range to 262 to 327 months for both counts. But taking into account the three-level downward departure for substantial assistance, the range became 188 to 235. So Mr. Lopez, well, Lopez and the government agreed that he should receive a reduction to 188 months on both counts of conviction. And to that end, they submitted a proposed agreed order to the District Court that would grant him that reduction. But the District Court found that the sentencing range had been reduced only on the cocaine count, not on the marijuana count. The reason being that by operation of the guidelines, the court believed that 240 months was the single-point range for the marijuana count because it was capped by the 20-year statutory maximum, whereas on the other hand, for the cocaine count, it was 188 to 235 because it carried a more severe statutory range of 10 years to life. Now, in order to be eligible for a sentencing reduction, the statute 3582C2 requires that the sentencing range must have been reduced. And then if you look at the guidelines, it talks about guideline range and guideline sentence. And that comes into play where there is an interaction between a statutory minimum or maximum and the resulting guidelines range. So here, where the, what Guideline 5G1.1A does, it says that the range determined by the guidelines calculations is the guideline range. That's the phrase used, guideline range. However, if a statutory maximum or minimum is outside that range, so let's say that the statutory maximum is below the guideline range, then the maximum becomes the guideline sentence, which is the phrase used. Likewise, if a mandatory minimum is entirely above the guidelines range, then that is also referred to as a guideline sentence. But in both cases, the range, and in particular in the circumstances of this case, the range, guideline range for both cases, was the same. It was that which was determined by the grouping rules. It was originally 292 to 365 and became 262 to 327 after the amendment reducing the drug offense levels. Now, to say that in these particular circumstances, Mr. Lopez would only be eligible for a reduction on the more serious of the two counts, effectively because it was more serious, because he had greater sentencing exposure, it would be absurd to say he's eligible for a reduction on that count, but not eligible for a reduction on the less serious count. And a count that, at least in the guidelines calculation, contributed far less to the resulting range. The total quantity that he was held responsible for was about 2,300 kilograms of converting the cocaine to marijuana equivalents. The marijuana itself only accounted for a little over 100 kilograms of that total. So he was held responsible for 20 times the amount of marijuana involved in the marijuana count, and yet he did not get a reduction on that count, but he did get a reduction on the cocaine count. And there's nothing to suggest in the statute or in the guidelines that Congress or the And I would say this is an unusual situation. My office handled a lot of these drug reduction cases, and I don't remember seeing any like this where there was this unique interaction. Is your argument informed by or to take into account what the recent Amendment 780 that cures a similar problem with regard to the minimum statute? Are you familiar with that? I'm not sure I follow this question. Okay. But of particular importance here is the fact that he did receive a departure under 5K1.1, which is important for purposes of his eligibility for a sentence reduction. Generally speaking, a court may not reduce a sentence to a point below the bottom end of the amended range, even if the defendant received a departure at the time he was originally sentenced. There's an exception for defendants who receive a 5K1.1 departure for substantial assistance. Those defendants can receive a reduction to a sentence below the bottom end of the amended range, but it has to be proportional. So in this case, in the worksheet that the probation officer prepared, it calculated the percentage relationship between the original guidelines range and the sentence that was imposed and said that a proportional percentage reduction will result in these numbers. And so had there not been a 5K1.1 motion in this case, we wouldn't be here. But there was. And generally speaking, the policy behind 5K1.1 and the statutory authorization as well in 3553e is to reward defendants for cooperating, and that's why that exception exists to the general rule that a court cannot. Do you agree that we, our standard of review is plain error? I disagree with that, Your Honor. Unlike an original sentencing, there are no prescribed procedures for handling a 3582c2 motion. So in Rule 32 in an original sentencing, for example, the probation officer is required to prepare a pre-sentence report to disclose it to the parties, and then the parties have 14 days to submit objections in writing to that pre-sentence report. But there is no comparable procedure in the rules and statutes for 3582c2. Here what happened is the probation officer prepared a worksheet that had the various calculations, but that didn't have the same formality as a pre-sentence report, and there's no rule. You agreed with those calculations. Pardon? You all agreed, your client agreed with those calculations. Well, we and the government agreed that he was eligible for a reduction to 188 months on both counts. Based on those, but that's what the calculations showed. Well, the probation officer's calculations showed the guideline range, as it was, as 240 months for the marijuana count, so a single point, not a range. But it still recommended a reduction on the marijuana count to 188 months. Well, the way it was phrased is the original sentence on the marijuana count represented a 12.5% reduction below the 240-month single point range. And then the worksheet said a comparable reduction now below 240 months would be 12.5%, and so that's 210 months. So it's phrased kind of unusually. It doesn't say he's not eligible. It says here's what the original range was, here's what the amended range is. They're both 240 months, and so a comparable reduction from the original sentence remains the same. But the 240 was not really the range. Pardon? The 240 was not really the range. It was the statutory maximum. It was the statutory maximum, and the way that Guideline 5G1.1 refers to it as a guideline sentence rather than a guideline range. But in this case, the real basis for the sentence on both counts was the range that was determined by grouping the two together and combining the drug quantities for the cocaine and the marijuana. Now, as to the standard of review, as I said, there's no formal requirement that the probation officer even prepare one of these worksheets. There's no rule or statute. How did you preserve your objections? How was the objection preserved? Well, in this case, the process for handling these motions in the El Paso Division was for my office and the government to meet, and if we could agree that a defendant was eligible for a reduction and could agree on a recommended reduction, then what we would do is submit a proposed agreed order to the district court for the judge's signature, and then the judge would either sign that or not. Now, in this case, the proposed amended order would have reduced the sentence to 188 months on both counts, but the judge, with handwritten interlineations, granted him a reduction to 188 months only on the cocaine count and said that the 210-month sentence on the marijuana count. Where did the judge do that? Was that in open court, or was that in him? No. No. No, there was no hearing. Then what did you do? Well, first of all, you didn't have opportunity to object at that point when the judge struck through it, right? No. There was no hearing on the matter. We submitted the proposed agreed order. It wasn't actually filed. It was just transmitted to the judge's chambers. That's the procedure that was followed. I want to ask Judge Owen's question. What did you do after you found out that he had struck through it? After that, we filed a notice of appeal. So you never asked the district court to reconsider or said that this amendment does apply because of the just ---- There was nothing other than the proposed agreed order that both parties jointly submitted to the court. There was no formal motion laying out the math or anything like that, but it's certainly at the very least implicit in the request for a reduction to 188 months on both counts that he was in fact eligible. How do we know the rationale behind what the district court did? Well, what the court wrote, there's two separate ---- there is a written order and then there's also a form that was prepared by the AO, which was then sent to the Sentencing Commission for the compilation of data on these. In the agreed order ---- He concluded that the amendment does not apply, it's not applicable? Well, what the court said in the explanation for the ruling in the AO form, which is at pages 116 and 325 of the record, on page 325, it has the calculation of the original range and the amended range and says that previous guideline range, the noted previous guideline range applies to count 2, which was the cocaine count. As to count 4, the previous guideline range was 240 months pursuant to 5G1.1a, which is the guideline that talks about the interaction between statutory maximums and minimums in the guidelines range. And then it says amended guideline range, the noted amended guideline range applies to count 2, the cocaine count. As to count 4, the amended guideline range is 240 months pursuant to 5G1.1a. So there's no other explanation, but I think fair inference is that ---- You didn't think the amendment applied. And so after that, you said nothing and said, no, Judge, it does apply because, as you said, you just filed a notice of appeal. Right. And as far as I know, there's no requirement in the rules or in the statute that there be a motion to reconsider in this situation. But you still have to preserve error somehow or another. Yes. And to preserve error, a party has to make the court aware of the ruling the party wants. And that's what we did. And why? Go ahead. And so that's why I believe that the error was, in fact, preserved here. And, again, the government agreed with the reduction on both. The government relied on our decision and Carter. And even in your reply brief, you did not address that. Yes. Well, Carter involved a mandatory minimum, which ---- I agree. And I think it could be distinguished, but you sure didn't give us much help. I should have. The error has been overruled by the guidelines, by the subsequent amendment. It would have been helpful for you to say that. Well, I'm not sure that Carter was entirely overruled by Coons and Hughes. It's not the entire holding, I don't think, remains. I'm just saying, whatever you had to say about Carter, it would have been helpful for us to get your take on it. Yes, Your Honor. If I may, I could tell the court now. Strictly speaking, both Carter and Coons and Hughes, the Supreme Court decisions, concerned whether a sentence was based on a range that has been reduced, the phrase based on coming from 3582C2. And Carter actually goes a little further to talk about whether the range itself has been reduced or not, not simply whether the sentence, the original sentence, was based on that range. Coons and Hughes focus on the based on aspect of it, and they hold that a sentence is based on a range when the guidelines range is a part of the analytical framework for the sentence that the court imposed. So I suppose there's two aspects to eligibility. One, whether the range was reduced, and Carter, I think, a fair reading of it, talks about that as well as whether the sentence was based on, whereas Coons and Hughes are talking only about whether the sentence was based on the range. But it's fair to say that, in particular, Hughes, which involved a sentence that was originally imposed pursuant to Rule 11C1C, plea agreement, said that if the guidelines range was part of the analytical framework for the agreed sentence, then, yes, the original sentence was based on the original guidelines range and somebody's eligible for a reduction. So, again, we have this absurd situation where if Lopez had been sentenced pursuant to a C1C agreement that tied the recommended sentence to the guidelines range, I think he would clearly be eligible. But he's not or, excuse me, the district court at least implicitly found that he's not because of really this unusual situation where you've got two separate drug counts with dramatically different statutory ranges, even though the guideline range for both is driven entirely by the more serious count. And, again, there's just nothing in the rules or the guidelines to suggest that a defendant in this situation, on the particular facts of Lopez's case, would be eligible for a reduction on the more serious count but not the less serious count, even though the guidelines determine the range for both counts. Thank you, sir. You have time on rebuttal. May it please the Court. Zachary Richter for the United States. I'd like to start with Judge Dennis's question about Amendment 780. Amendment 780 was an amendment made by the Commission, and that amendment is irrelevant to this case for two different reasons. The first reason is that amendment only covers situations involving statutory minimums. In this case, we have a statutory maximum that controlled the sentencing range before and after the amendment to the drug quantity guidelines. The second reason that Amendment 780 is irrelevant is that the Supreme Court in Coons explained that there has to be statutory eligibility in addition to eligibility under the guidelines. And looking at Amendment 780, which was raised in that case, the Court said that the Commission's expression of a policy in favor of a reduction in that situation involving statutory minimums was not sufficient to overcome the statutory requirement that a sentencing range had been lowered. And that's really the key language of the statute here, that the sentencing range has been lowered. This Court in Carter explained that the range is the statutory maximum or minimum when the guidelines would otherwise recommend a higher or lower sentence. So we know from Carter and also from the statutory language and the language of the Federal rules that the statutory term sentencing range means the statutory maximum in a case like this. Well, let's hold up here. Carter was based on the language of the guidelines at the time. And Carter hung its hat largely on, when all is said and done, it talked about 1B1.10a1, and it talked about the language in the commentary about eligibility. That's right. But the guidelines have been dramatically amended. And it seems to me, how do you address the new subsection C in 10.1B110? Yes. I follow you, Judge Gilliam. And that seems to me that completely undoes Carter. No, Your Honor, because that is Amendment 780, that 1B1.10c. I'm talking about Carter, not this case. Let's talk about Carter. Sure. And so it doesn't undo Carter because Koons says it doesn't. In Koons, the Supreme Court looked at precisely the section that you're referring to, and it's the court said that the statutory requirement for eligibility, that the original sentence be based on a sentencing range that was lowered by a guidelines amendment, trumps that expression of policy by the Commission. And that's at the very end of the Koons decision from last summer. So the logic that this Court used in Carter about why that defendant was ineligible is precisely what the Supreme Court ultimately adopted in Koons, and that answers what the Commission did in Amendment 780, which has become section 1. Carter went off on the guidelines, not on the guidelines provisions, not on the statute. There were two parts of Carter, actually. Right. All of what Carter says about the guidelines is no longer good law, it seems to me. That's incorrect, Your Honor. And respectfully, the part of the guidelines commentary that Carter relied on is still part of the guidelines commentary. The new additions to the guidelines commentary and the amendment to the guidelines only covers statutory minimums, not statutory maximums. And in any event, you still have the requirement, the statutory requirement, because you don't get to the guidelines until you meet the statutory eligibility requirements. The reason Carter is relevant is that it rebuts the defendant's argument that a guideline range must somehow be different from a guideline sentence. This Court rejected that in Carter, and it rejected it again in Pratt several years later. And so if you — and the other issue is if you want to go beyond the guidelines and the logic of Carter, then you can look to the statutory text and the text of the Federal rules. To be consistent across all of the statutory provisions that were passed at the same time, the term sentencing range must mean the statutory maximum, because the other parts of the Sentencing Reform Act that were passed at the same time and that are still good law refer to a sentencing range that must mean the statutory maximum. It can't mean what the defendant suggests, which is an interim preliminary guidelines calculation. So because this defendant's statutory maximum was 240 months, that became his statutory range for purposes of the statute. The probation officer and then later the district court identified that the statutory range was 240 months before the amendment. It was 240 months after the amendment. And since that sentencing range had not been lowered, this defendant — Well, statutory range was — it could be below 240. It could be below. His sentencing range could have been below, but it was not in this case. And so there is nothing — there is nothing other than the statutory maximum to serve as the sentencing range in this case. His — the guidelines would otherwise have recommended something well in excess of the ultimate sentencing range, which was 240 months, based on the statutory maximum. And when you talk about the statute, to be consistent, it has to — that sentencing range must be the statutory maximum. That's also true under the text of the Federal rules. Federal Rule 32, Criminal Rule 32, which controls sentencing, says that the pre-sentence report must identify any factor relevant to the appropriate sentence within the applicable sentencing range. Well, under the defendant's interpretation, the sentencing — the sentence, appropriate sentence, the mandatory maximum, couldn't have been within the sentencing range. So, again, when you look at this meaning of sentencing range across the rules, across the statute, you see that sentencing range must mean the statutory maximum. And I also wanted to address the issue of plain error that both Judge Owen and Judge Wiener brought up. The sequence here was that the probation officer identified the sentencing range as 240 months for the marijuana count before the amendment and 240 months after the amendment. Then several months passed. During those several months, there was no objection to say and to express the argument that the defendant has now raised, which is, hey, you've got the sentencing range wrong. This sentencing range has actually changed for this marijuana count. And so there was plenty of opportunity to object to that and to try to correct that calculation. And that was not done. And in cases involving sentence reductions that involve just the same kind of procedure that we have in this case, those are Evans and Chappell, both of which are cited in our brief. This Court said in both situations, despite the more streamlined procedures that apply for sentencing reductions, that the defendant actually has to make the argument that he or she wants to present to this Court. It's not enough to ask for a sentence reduction and just say, I want this reduction and I want it in this amount. The defendant actually has to express the argument for that sentence reduction and can't switch the arguments between the district court and on appeal. And that, of course, is to protect the record and allow the district court to make findings in the first instance and to make the correct determination in the first instance. And so in this case, nobody came to the district court and said, hey, the sentencing ranges are off in the probation officer's worksheet, which certainly could have been done. And that's why we say plain error review applies. And that makes this case easy because for there to be plain error, the error must be clear or obvious. And it's not enough to say there's never been a circuit case on this point, which the defendant concedes. In fact, we think Carter's dispositive the other way, and multiple unpublished decisions support our position. And it's also not enough to say that the guidelines are straightforward because what the defendant is actually pushing here is an inference from one provision of the guidelines that is not in any way expressed. So we don't think that there's any clear or obvious error here. But ultimately, this Court can just rely on the fact that there wasn't error at all. The district court got this right because the sentencing range had not been lowered before or after the sentencing amendments. I don't think that there's any absurd result here, and I don't think the Court's precedents would support the main thrust of the defendant's argument that there is an absurd result here. The Supreme Court's decision in Kunz shows us that there are going to be situations where the general policy about sentence reductions is not going to prevail over the statutory language. And that might be the case in many situations in which you have a more serious crime and a less serious crime. So, for instance, in Kunz, what we know is or from Kunz, what we know is that a defendant is not eligible, statutorily eligible, for a sentence reduction when the original sentence was not based on a sentencing range, because instead it was based on a statutory minimum. That's the holding of Kunz. Well, for a defendant who had a sentencing range well in excess of the statutory minimum, so who had committed a much, much more serious crime or had a much, much more serious criminal history, that defendant would be eligible for a sentencing reduction because Kunz's logic would not come into play. So there will be situations where the interaction between the statute, statutory eligibility, and the way the guidelines operate means that some defendants will not be eligible in certain circumstances for sentence reductions. And that's simply the operation of a broad statute on the very fine-tuned operation of the guidelines. That's not absurd. In fact, the absurd result would be to say that this defendant and only this defendant in a small subset of cohorts would be eligible for a sentence reduction when many other defendants who committed the same crime at the same time in the same district would not be eligible by virtue. It wasn't that recent change in the guidelines of our 780 or whatever. It was to make sure that defendants who had rendered substantial assistance were not cheated out of their just moderation of their sentence. Yes, Your Honor. That was what the Commission was trying to accomplish. But what the Supreme Court explained in Kunz in addressing exactly that provision was that the Commission cannot change the statutory requirements for eligibility. The Commission issues in 1B.1.10c, which is what you're referring to, it's also called Amendment 780, a policy statement about when defendants should be eligible and the Commission has some control over eligibility. But the Supreme Court explained that the Commission can't change the statutory rules for eligibility, and those statutory rules for eligibility certainly control here. We believe that the guidelines also are important because the amendment that you're referring to is an amendment about statutory minimums. This is a case involving a statutory maximum. So under the plain text of that amendment, it doesn't even apply to this situation anyway. But I want to get also to what may be underlying your question, which is the role of 5K. A defendant can receive a reduction under Section 5K1.1 for substantial assistance. But it's a departure from the range, as the text of the guidelines makes clear and as this Court explained in multiple situations. The Supreme Court also reiterated that in the Coons case. So when you look at statutory eligibility, you're looking at the sentencing range. You're not looking at a departure from that range. And so 5K does not change what happens here. The sentencing range was 240 months before. The sentencing range is 240 months after. And so the district court correctly found that this defendant was ineligible for a reduction. And just to reiterate that point, this Court's decision in Carter also talks about the role of 5K and what role 5K should play, and underlines the point that I was just making about 5K being a basis for departure and not a change to the sentencing range. And if there are no further questions, then I would urge the Court to affirm the district court and yield back the remainder of my time. Thank you, sir. You have five minutes on the vote. I'd like to address two points the government raised in its argument about the standard of review and the other policy. First, on the standard of review, the government says that the purpose of requiring an objection or an argument below is so that a party is not going to change sides and make different arguments on appeal. That is exactly what the government is doing here. The government agreed that Mr. Lopez was eligible for a reduction on both counts. And so the government joined in the agreed proposed order that we submitted to the district court. Now, the government has changed its mind and is arguing that he was not eligible, and I haven't heard the government explain why the change of face, what's different now. Why did the government believe that he was eligible in the district court as opposed to now? Second, the government is arguing that Congress or the Commission could have policy reasons for not allowing reductions in certain cases. But I can't imagine what possible policy reason there would be to ---- Let's get to the statutory language in Koontz. What ---- how was the original sentence based on a Guidelines provision, other than not the statutory maximum? Because here both counts were grouped together in the Guidelines calculation to come up with a Guideline range. The government moved for a 5K departure and asked specifically for three levels. So the request for a departure was keyed to the Guideline calculation, which, again, both counts were grouped to determine that calculation. And the district court granted the 5K reduction. And in the written statement of reasons for the sentence, the court said that the So the Guidelines were definitely a relevant part of it. But that didn't affect the marijuana sentence, did it? Well, it did because he got below the range. Assuming that 240 months was the single-point range for the marijuana count, he got a sentence below that. He got 210 months, which was exactly the same. Right. Exactly the same as the cocaine count and the bottom of the range after this three-level calculation that was in the government's 5K motion that the district court recited at sentencing. And, again, in the written statement of reasons, the court says the sentence is a departure based on the 5K motion. So in that sense, Mr. Lopez's sentences on both counts were based on the Guidelines range, as understood in Hughes and Coons. The only difference here is that instead of a mandatory minimum coming into play to limit possible eligibility, it's a statutory maximum. And, again, as to policy, I can't imagine what the policy reason would be for allowing a reduction on the more serious count precisely because it's more serious. If there are no further questions, I'll ask the Court to reverse the district court and remand. Thank you, sir. Thank you.